1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BANGALLY FATTY,

                              Petitioner,

          v.

KIRSTJEN M. NIELSEN, et al.,

                              Respondents.

CASE NO. C17-1535-MJP-BAT

**REPORT AND
RECOMMENDATION**

## INTRODUCTION

Bengally Fatty brings this 28 U.S.C. § 2241 immigration habeas action to obtain a judicial stay of removal pending the adjudication of his T visa application by U.S. Citizenship and Immigration Services ("USCIS"), and a bond hearing. Dkt. 9. He asserts it would violate due process to remove him before his T visa application is processed, and he brings an Administrative Procedures Act ("APA") claim alleging that U.S. Immigration and Customs Enforcement ("ICE") abused its discretion when it denied his administrative request for a stay of removal. *See id.* The Court temporarily stayed Mr. Fatty's removal pending consideration of his motion to stay. Dkts. 2 & 3.

The Government has filed a return memorandum and motion to dismiss Mr. Fatty's amended petition, arguing that the Court does not have jurisdiction to stay his removal, and

REPORT AND RECOMMENDATION - 1

1   alternatively, that he cannot prevail on his due process and APA claims.[1]  Dkts. 14, 16, 23, 25.

2   The Government also argues that Mr. Fatty is not entitled to a bond hearing.  Dkts. 14, 16.  Mr.

3   Fatty opposes dismissal.  Dkts. 15 & 24.

4          Having considered the parties' submissions, the balance of the record, and the governing

5   law, the Court recommends that the Government's motion to dismiss be **GRANTED** with

6   respect to Mr. Fatty's due process and APA claims, and **CONDITIONALLY GRANTED** with

7   respect to his request for a bond hearing; Mr. Fatty should not be granted a bond hearing unless

8   the Government fails to remove him within 30 days of the Order on this Report and

9   Recommendation.  The Court further recommends that the temporary stay of removal be

10  **VACATED** and Mr. Fatty's motion to stay be **DENIED** as moot.

## BACKGROUND

12  **A.     Mr. Fatty's arrival in the United States**

13         Mr. Fatty, a native and citizen of the Republic of Gambia, entered the United States on an

14  F-1 student visa on July 13, 2002, intending to attend Florida Memorial College.  Dkt. 9 at ¶ 20;

15  Dkt. 5-1 at ¶ 3.  The funding he thought he would receive for school was not available, and he

16  claims that subsequently he was the victim of labor trafficking at a Pennsylvania restaurant.  Dkt.

17  9 at ¶¶ 21-24.  After he escaped, he alleges, he eventually settled in Alaska.  Dkt. 9 at ¶ 25.

18         On June 22, 2004, the Department of Homeland Security ("DHS") initiated removal

19  proceedings against Mr. Fatty by serving him with a Notice to Appear charging him as

20  removable based on his failure to maintain student status.  Dkt. 5-1 at ¶ 5.  On January 6, 2005,

21  Mr. Fatty married his first wife, a United States citizen.  Dkt. 9 at ¶ 25; Dkt. 5-1 at ¶ 6.  On June

22

23

---

[1] The Government also filed a motion to dismiss Mr. Fatty's original petition.  Dkt. 5.  This motion should be **DENIED** as moot.

REPORT AND RECOMMENDATION - 2

9, 2005, while in removal proceedings, an immigration judge ("IJ") granted Mr. Fatty's

application for adjustment of status based on his marriage, and as a result, Mr. Fatty became a

lawful permanent resident.  Dkt. 9 at ¶ 25; Dkt. 5-1 at ¶ 7-9.

**B.      Mr. Fatty's second removal proceedings and ICE's efforts to remove him**

In 2006, Mr. Fatty was convicted of multiple offenses, including domestic violence.  Dkt.

5-1 at ¶¶ 10-14.  On February 6, 2007, DHS issued a second Notice to Appear, this time charging

Mr. Fatty as removable based on his convictions for domestic violence and violating a protection

order.  *Id.* at ¶ 15.  On January 8, 2009, an IJ denied Mr. Fatty's application for asylum and

ordered him removed to the Republic of Gambia.  Dkt. 9 at ¶ 25; Dkt. 5-1 at ¶¶ 20-21.  Mr. Fatty

appealed to the Board of Immigration Appeals ("BIA").  Dkt. 5-1 at ¶ 22.  While his appeal was

pending, he and his first wife divorced.  Dkt. 9 at ¶ 25.  On March 30, 2011, the BIA dismissed

Mr. Fatty's appeal.  Dkt. 5-1 at ¶ 23.  Mr. Fatty filed a petition for review with the Ninth Circuit,

which was dismissed for failure to prosecute.  *Id.* at ¶¶ 24-26.  Mr. Fatty's removal order became

final.

In December 2012, Mr. Fatty was convicted in Oklahoma state court for felony

trafficking in illegal drugs, as well as jumping bail.  Dkt. 5-1 at ¶ 27.  He was released from

prison on October 27, 2013, and transferred to ICE custody.  *Id.* at ¶ 27.  ICE attempted to obtain

a travel document to remove Mr. Fatty but was unsuccessful.  *Id.* at ¶¶ 28-30.  On January 21,

2014, ICE released Mr. Fatty on an Order of Supervision and informed him that he would be re-

detained once a travel document was obtained.  Dkt. 9 at ¶ 26; Dkt. 5-1 at ¶ 31.

After his release in 2014, Mr. Fatty committed to turning his life around.  Dkt. 9 at ¶ 27.

He enrolled at Shoreline Community College and then transferred to the University of

Washington.  *Id.*  He did volunteer work and earned good grades.  *Id.*  In 2016, Mr. Fatty married

his second wife and they had a daughter in July 2017. *Id.* at ¶ 28. Mr. Fatty also has a 9-year-old daughter who lives with her mother in Minnesota; Mr. Fatty helps support her. *Id.*

On May 11, 2017, the Republic of Gambia issued a temporary travel document for Mr. Fatty, which expired on November 11, 2017. Dkt. 5-1 at ¶ 35. ICE subsequently obtained a second temporary travel document for Mr. Fatty, which is valid until May 28, 2018. Dkt. 14-2 at ¶ 8.

On September 19, 2017, ICE took Mr. Fatty into custody to effect his removal and detained him at the Northwest Detention Center in Tacoma, Washington. *Id.* at ¶ 38. ICE scheduled Mr. Fatty to be removed on an October 24, 2017 flight. Dkt. 14-2 at ¶ 4. Mr. Fatty's attorney subsequently attempted to file an I-246 request for a stay of removal with ICE, but ICE refused to accept it because it did not comply with the regulations. *Id.* at 39; Dkt. 9 at ¶ 30.

**C.    The instant habeas action**

On October 13, 2017, Mr. Fatty filed the instant habeas action and an emergency motion to stay his removal. Dkts. 1 & 2. Mr. Fatty claimed that he was eligible for a T visa because he was a trafficking victim and that it would violate due process to remove him before his application was adjudicated. *See* Dkt. 1. He also challenged ICE's refusal to accept his I-246 application for a stay of removal and requested a bond hearing. *See id.*

On October 16, 2017, the Court granted a temporary stay of removal pending resolution of Mr. Fatty's motion to stay. Dkt. 3. The Court also directed that his habeas petition and motion to stay be served on the Government. *Id.*

**D.    Mr. Fatty's T visa application**

Mr. Fatty submitted a T visa application, which was received by USCIS on or about October 18, 2017. Dkt. 14-3 at ¶ 6. The T nonimmigrant classification was created by Congress

1    in 2000 to provide immigration relief to certain victims of severe forms of trafficking in persons,

2    to strengthen law enforcement's ability to investigate and prosecute severe forms of trafficking

3    in persons, and to encourage exploited and abused victims to report such trafficking even if they

4    do not have immigration status.  Dkt. 14-1 at ¶ 2; *see also* 8 U.S.C. §§ 1101(a)(15)(T), 1184(o),

5    1255(l); 22 U.S.C. §§ 7101, 7105; 8 C.F.R. § 214.11.  If a T visa application is approved, the

6    applicant will receive lawful T-1 nonimmigrant status and employment authorization for 4 years.

7    Dkt. 14-1 at ¶ 2.  Additionally, after three years of continuous physical presence in T

8    nonimmigrant status, the T-1 nonimmigrant may apply for adjustment of status to lawful

9    permanent residence.  *Id.*

10           To be eligible for a T visa, a noncitizen (1) must be or have been a victim of a severe

11   form of trafficking in persons[2]; (2) must be physically present in the United States or at a port-

12   of-entry; (3) must have complied with any reasonable request for assistance by government

13   officials into the acts of trafficking in persons; and (4) would suffer extreme hardship involving

14   unusual and severe harm upon removal.  8 C.F.R. § 214.11(b).

15           A noncitizen who has been ordered removed may file a T visa application directly with

16   USCIS, which has sole jurisdiction over such applications.  8 C.F.R. § 214.11(d)(1)(ii).  The

17   regulations make clear that "[t]he filing of an application for T nonimmigrant status has no effect

18   on DHS authority or discretion to execute a final order of removal, although the [noncitizen] may

19   request an administrative stay of removal pursuant to 8 C.F.R. § 241.6(a)."[3]  *Id.*; *see also* 8

20   _____

21   [2] This includes "the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services
     through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt
22   bondage, or slavery."  8 C.F.R. § 214.11(a).

     [3] Such an administrative stay of removal is left to the appropriate government official's "discretion and in
23   consideration of factors listed in 8 C.F.R. § 212.5 and [8 U.S.C. § 1231(c)]."  8 C.F.R. § 241.6.  Under § 212.5,
     which otherwise relates to parole of applicants for admission, a stay of removal "would generally be justified only
     on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen]
     presents neither a security risk nor a risk of absconding," and falls into one of several categories, including witnesses

1    C.F.R. § 214.11(e)(3) ("The filing of an application for T nonimmigrant status does not

2    automatically stay the execution of a final order unless USCIS has determined that the

3    application is bona fide.").

4          "Once [a noncitizen] submits an application for T-1 nonimmigrant status, USCIS will

5    conduct an initial review to determine if the application is a bona fide application . . . ." 8 C.F.R.

6    §214.11(d)(7).  An application will be deemed bona fide if it is properly filed and is complete, it

7    does not appear to be fraudulent, it presents prima facie evidence of each eligibility requirement,

8    biometrics and background checks are complete, and the applicant is either admissible or, if

9    inadmissible on a ground that may be waived, the applicant has filed a request for a waiver.[4]  8

10   C.F.R. § 214.11(e)(1).  Once USICS provides notice to the applicant that the application is bona

11   fide, it automatically stays the execution of any final order of removal.  8 C.F.R. §§ 214.11(e)(2)-

12   (3).

13         If an application is incomplete or does not present sufficient evidence to establish prima

14   facie eligibility, "USCIS may request additional information, issue a notice of intent to deny . . . ,

15   or may adjudicate the application on the basis of the evidence presented . . . ." 8 C.F.R. §

16   214.11(e)(2)(i).  The burden is on the applicant to demonstrate eligibility, and "USCIS will

17   determine, in its sole discretion, the evidentiary value of previously or concurrently submitted

18   evidence."  8 C.F.R. § 214.11(d)(6).

19         Mr. Fatty's T visa application is based on his claim that he was the victim of labor

20   trafficking shortly after he arrived in the United States.  Dkt. 9-1 at 13.  Mr. Fatty claims that his

21

22   in proceedings being or to be conducted or noncitizens for whom continued detention is not in the public interest.  8
C.F.R. § 212.5(b).  Under § 1231(c), which otherwise relates to noncitizens arriving at a port of entry, a stay of

23   removal is authorized if the government decides that immediate removal is not practicable or proper, or the
noncitizen is needed to testify in a criminal prosecution.  8 U.S.C. § 1231(c)(2).

[4] "All waivers are discretionary . . . ."  8 C.F.R. § 214.11(e)(1)(v)(B).

T visa application is bona fide.  Dkt. 9 at ¶ 42.  The Government, however, has submitted evidence that upon initial review, USCIS could not determine that his application was not fraudulent, and the Federal Bureau of Investigation had not yet completed his background check. Dkt. 14-3 at ¶¶ 7-9.  Mr. Fatty has submitted additional information to support his application. *See* Dkt. 20.

**E.    Mr. Fatty's bond hearing and second request for an administrative stay of removal**

On November 29, 2017, Mr. Fatty had a bond hearing, at his request, before an IJ.  Dkt. 14-2 at ¶ 9; Dkt. 9 at ¶ 33.  The IJ determined he was not eligible for a bond hearing because he has a final order of removal and had not been detained for at least 180 days.  Dkt. 14-2 at ¶ 9.

On December 8, 2017, Mr. Fatty filed a second I-246 request for a stay of removal with ICE.  Dkt. 14-2 at ¶ 10.  ICE's Seattle Field Office Director denied the request in a detailed, nine-page letter on December 14, 2017.  Dkt. 14-2 at 9-17.

**F.    Additional procedural history**

On November 15, 2017, the Government filed a motion to dismiss.  Dkt. 5.  Mr. Fatty subsequently filed an amended habeas petition.  Dkt. 9.  On December 20, 2017, the Government moved to dismiss Mr. Fatty's amended habeas petition.  Dkt. 14.  After the motion was fully briefed, the Court ordered the parties to submit supplemental briefing on the due process issue. Dkt. 22.  The parties filed their supplemental briefs, Dkts. 23-25, and the action is now ripe for review.

**DISCUSSION**

Mr. Fatty's amended petition raises three issues:  (1) whether his removal prior to adjudication of his T visa application would violate his due process rights, (2) whether ICE's denial of his request for a stay is arbitrary, irrational, or contrary to law under the APA, and (3)

whether he is entitled to a bond hearing.  Dkt. 9.  Because the Government argues that the Court

does not have jurisdiction to stay Mr. Fatty's removal or review ICE's denial of his request for a

stay, the Court will consider the first two issues together before turning to the bond hearing issue.

**A.    Due Process and APA Claims**

  **1.    Jurisdiction**

The Government argues that 8 U.S.C. § 1252(g) bars the Court from staying Mr. Fatty's

removal, and therefore his due process and APA claims should be dismissed for lack of subject

matter jurisdiction.  Dkt. 14 at 8-11.  Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law
> (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas
> corpus provision, and sections 1361 and 1651 of such title, no court shall have
> jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising
> from the decision or action by the Attorney General to commence proceedings,
> adjudicate cases, or execute removal orders against any [noncitizen] under this
> chapter.

8 U.S.C. § 1252(g).  The Supreme Court has emphasized that this provision "was directed

against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion,"

and applies to only the three discrete listed actions: the commencement of proceedings,

adjudication of cases, and execution of removal orders.  *Reno v. Am.-Arab Anti-Discrimination

Committee*, 525 U.S. 471, 482, 485 n.9 (1999) ("*AADC*").

The Ninth Circuit has interpreted § 1252(g) narrowly and allowed injunctive relief in

certain situations.  *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)

(holding that § 1252(g) did not bar district court from entering permanent injunction prohibiting

government from commencing removal proceedings against the plaintiff based on new statutory

provisions that the plaintiff claimed did not apply to him, reasoning that the "gravamen" of his

claim did not arise from the decision to commence proceedings); *Barahona-Gomez v. Reno*, 236

REPORT AND RECOMMENDATION - 8

F.3d 1115, 1120-21 (9th Cir. 2001) (holding that statute did not bar issuance of a preliminary

injunction restricting the implementation of a directive that had halted the grant of suspensions of

deportation); *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1149-50 (9th Cir. 2000) (en banc)

(rejecting claim that statute deprived the district court of jurisdiction to enter a preliminary

injunction); *Barapind v. Reno*, 225 F.3d 1100, 1109-10 (9th Cir. 2000) (holding that statute does

not preclude jurisdiction over habeas petition for stay of asylum proceedings); *Walters v. Reno*,

145 F.3d 1032, 1051-52 (9th Cir. 1989) (holding, pre-*AADC*, that district court had jurisdiction

to grant permanent injunction prohibiting plaintiffs' removal where plaintiffs brought due

process challenge to removal proceedings that did not arise from a decision or action to execute

removal orders and was instead a "general collateral challenge[] to unconstitutional practices and

policies used by the agency"); *but see Garcia-Herrera v. Asher*, 585 Fed. Appx. 439, 440 (9th

Cir. 2014) (challenge to ICE's decision not to delay petitioner's removal pending adjudication of

his application for the Deferred Action for Childhood Arrivals program "constitutes a challenge

to ICE's decision to execute a removal order" and is barred by § 1252(g)).

District courts have reached different conclusions regarding the scope of § 1252(g) when

a party requests a stay of removal.  As the Government argues, judges in this district have

routinely held that § 1252(g) deprives the court of jurisdiction to enter a stay.  *E.g.*, *Diaz-*

*Amezcua v. Johnson*, No. 14-1313, 2015 WL 419029, at *3 (W.D. Wash. Jan. 30, 2015)

("Petitioner's request to stay his removal arises from the decision or action by the Attorney

General to execute his removal order, and this Court therefore is without jurisdiction to hear such

a claim, even if the claim is for a short stay while he seeks additional administrative remedies.");

*Rodriguez-Henriquez v. Asher*, No. 14-1719, 2015 WL 778115, at *4 (W.D. Wash. Feb. 24,

2015) ("Mr. Rodriguez-Henriquez's request that this Court stay the execution of his final order

of removal while he seeks additional administrative remedies directly impacts the government's ability to 'execute' his removal order and is thus precluded by § 1252(g).");  *Verduzco v. Napolitano*, No. 13-1188, 2013 WL 5738917, at *3 (W.D. Wash. Oct. 22, 2013) (same); *Tarhan v. Dep't of Homeland Sec.*, No. 11-1185, 2011 WL 3703375, at *2 (W.D. Wash. Jul. 15, 2011), *R & R adopted by* 2011 WL 3684644 (W.D. Wash. Aug. 23, 2011) ("A request to stay an order of removal based on a pending collateral claim does not escape the jurisdiction stripping provisions of the REAL ID Act." (quoting *Mancho v. Chertoff*, 480 F. Supp. 2d 160, 162 (D.D.C. 2007)); *see also Ma v. Holder*, 860 F. Supp. 2d 1048, 1057-60 (C.D. Cal. 2012) (concluding that request for stay of removal pending adjudication of the petitioner's motion to reopen was barred by § 1252(g)).[5]

Other judges in the Ninth Circuit have concluded that § 1252(g) does not prevent them from staying execution of a removal order.  *E.g.*, *Sied v. Nielsen*, No. 17-6785, 2018 WL 1142202, *14 - *15 (N.D. Cal. Mar. 2, 2018) (adopting reasoning of *Chhoeun v. Marin*, *infra*, and staying execution of removal order pending petitioner's motion to reopen); *Chhoeun v. Marin*, No. 17-1898, 2018 WL 566821, at *7 - *9 (C.D. Cal. Jan. 25, 2018) (concluding that court had jurisdiction to stay execution of removal order pending petitioners' motions to reopen

---

[5] Some courts outside the Ninth Circuit have reached the same conclusion.  *E.g. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) (holding that "a request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order," and rejecting petitioners' argument that they were not challenging the underlying removal order and instead only seeking a stay pending a motion to reopen); *Hamama v. Adducci*, 258 F. Supp. 3d 828, 834-38 (E.D. Mich. 2017) ("*Hamama I*") (concluding that § 1252(g) bars request to stay removal pending motions to reopen but assuming jurisdiction under the Suspension Clause); *Nken v. Chertoff*, 559 F. Supp. 2d 32, 36-37 (D.D.C. 2008) (concluding that request for stay was barred by § 1252(g) despite petitioner's argument that stay was necessary to allow constitutional challenge to removal prior to adjudication of his motion to reopen); *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 121-24 (D.D.C. 2006) (concluding that court did not have jurisdiction to stay removal pending motion to reopen); *Ibrahim v. Acosta*, No. 17-24574, 2018 WL 582520, at *4 - *5 (S.D. Fl. Jan. 26, 2018) (following *Hamama I*); *cf. Devitri v. Cronen*, --- F. Supp. 3d ----, 2017 WL 5707528, at *3 - *5 (D. Mass. Nov. 27, 2017) (suggesting that § 1252(g) prevents court from issuing stay pending petitioners' motions to reopen, but concluding that if it did, it would violate the Suspension Clause as applied, and therefore assuming jurisdiction over action).

and reasoning that the Ninth Circuit has "consistently held that district courts have jurisdiction when, as in this case, petitioners do not directly challenge their orders of removal, but rather assert a due process right to challenge the orders in the appropriate court"); *Ilyabaev v. Kane*, 847 F. Supp. 2d 1168, 1174-75 (D. Ariz. 2012) (deciding that § 1252(g) does not prevent court from staying petitioners' removal because their action did not challenge the government's "discretionary decision" to remove them but rather claimed "that it would be unlawful to remove them before they have had the opportunity to exercise their legal right to challenge [the government's] basis for revoking the I-140 Petition"); *Dhillon v. Mayorkas*, No. 10-723, 2010 WL 1338132, at *5 - *9 (N.D. Cal. Apr. 5, 2010) (determining that § 1252(g) did not prevent court from staying execution of removal order pending adjudication of claims that were "fully collateral" to the removal proceedings); *Banares v. Demore*, No. 08-3436, 2009 WL 10684926, at *2 (C.D. Cal. Apr. 16, 2009) (concluding that § 1252(g) "does not bar claims that, while related to the discrete actions mentioned therein, more specifically challenge actions of a different nature," which included plaintiffs' claim that execution of their removal orders was unlawful because there was a court order staying such removal). Mr. Fatty contends that the Court should follow this line of cases because he is raising the collateral issue of whether due process entitles him to a decision on his T visa application. Dkt. 15 at 6.

As an initial matter, the Court concludes that it does not have jurisdiction over Mr. Fatty's challenge to the denial of his administrative request for a stay of removal. As Mr. Fatty recognizes, the ultimate decision of whether to grant or deny an administrative stay is discretionary. Dkt. 15 at 19. Because § 1252(g) was intended to prevent challenges to the exercise of prosecutorial discretion, *AADC*, 525 U.S. at 485 n.9, any challenge to ICE's discretionary decision falls within the ambit of § 1252(g), *Albarran v. Wong*, 157 F. Supp. 3d

779, 786-87 (N.D. Ill. 2016) (rejecting APA-based challenge to the denial of a stay based on § 1252(g)).[6]

With respect to Mr. Fatty's due process claim, the question is closer. To be sure, the weight of authority, summarized above, suggests that the Court does not have jurisdiction to stay his removal pending adjudication of his T visa application. Nevertheless, the Ninth Circuit has allowed courts to enjoin removal where there was a "general collateral challenge[] to unconstitutional practices and policies used by the agency." *Walters*, 145 F.3d at 1051-52. Arguably, Mr. Fatty's claim that due process requires him to remain in the country pending adjudication of his T visa application is such a "general collateral challenge." The Court, however, need not resolve this issue because even assuming the Court has jurisdiction, due process does not entitle Mr. Fatty to adjudication of his T visa application, as discussed below.

### 2. Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Once a petitioner has identified a liberty or property interest protected by the Constitution, the Court must determine whether constitutionally sufficient procedural protections have been provided. *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1161 (9th Cir. 2004). "The fundamental

---

[6] To the extent Mr. Fatty claims that declining to exercise jurisdiction over his APA claim violates the Suspension Clause, his argument fails. The only cases that have relied on the Suspension Clause did so in extraordinary circumstances not present here. *See Hamama I*, 258 F. Supp. 3d at 838-42 (assuming jurisdiction under the Suspension Clause given "extraordinary circumstances" where Iraqi nationals established a "substantiated risk of death, torture, or other grave persecution" if they were removed before their motions to reopen could be adjudicated); *Ibrahim*, 2018 WL 582520, at *5 - *6 (following *Hamama I* and *Devitri* where "exceptional circumstances" involved international media coverage of the government's botched attempt to remove 92 Somali nationals, which increased likelihood that they would be persecuted upon removal); *Devitri*, 2017 WL 5707528, at *5 - *8 (assuming jurisdiction where petitioners were 51 Indonesian Christians who feared religious persecution if removed).

REPORT AND RECOMMENDATION - 12

1    requirement of due process is the opportunity to be heard "at a meaningful time and in a

2    meaningful manner."  *Matthews*, 424 U.S. at 333 (internal quotation and citation omitted).

3         "Due process is flexible and calls for such procedural protections as the particular

4    situation demands."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).  In deciding what due process

5    requires in a particular situation, the Court weighs (1) "the private interest that will be affected

6    by the official action"; (2) "the risk of an erroneous deprivation of such interest through the

7    procedures used, and the probable value, if any, of additional or substitute procedural

8    safeguards"; and (3) the Government's interest, including the function involved and the fiscal

9    and administrative burdens that the additional or substitute procedural requirement would entail."

10   *Matthews*, 424 U.S. at 335.

11        Mr. Fatty asserts that he has a liberty interest in preventing his removal, remaining in the

12   United States, and staying with his family.  Dkt. 24 at 2.  He also contends that he has a protected

13   property interest in his T visa application.  *Id.* at 5.  As discussed below, the Court concludes that

14   Mr. Fatty has a liberty interest at stake but has received constitutionally sufficient process, and

15   he does not have a protected property interest.  Accordingly, his due process claim fails.

16        a.      **Liberty interest**

17        Courts have recognized that removal implicates substantial liberty interests, and therefore

18   "[t]he Fifth Amendment guarantees due process in deportation proceedings."  *Colmenar v. I.N.S.*,

19   210 F.3d 967, 971 (9th Cir. 2000); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[It] is

20   well established that the Fifth Amendment entitles [noncitizens] to due process of law in

21   deportation proceedings.") (internal quotation marks omitted; alterations added); *C.J.L.G. v.*

22   *Sessions*, 880 F.3d 1122, 1132 (9th Cir. 2018) ("the private liberty interests involved in

23   [removal] proceedings are indisputably substantial") (quoted source omitted; alteration in

1    original).  This means that a noncitizen facing removal is "entitled to a full and fair hearing of his

2    claims and a reasonable opportunity to present evidence on his behalf."  *Colmenar*, 210 F.3d at

3    971.

4         The Government argues that because Mr. Fatty already has been ordered removed in

5    proceedings that are not at issue in this case, he no longer has a due process right to remain in the

6    United States.  Dkt. 23 at 2-3 (citing *Perez Gonzales v. Ashcroft*, 112 Fed. Appx. 640, 641 (9th

7    Cir. 2004); *Valtchev v. I.N.S.*, 24 Fed. Appx. 735, 736 (9th Cir. 2001); *Gebhardt v. Nielsen*, 879

8    F.3d 980, 988 (9th Cir. 2018)).  Mr. Fatty responds that multiple district courts have recently

9    recognized a due process liberty interest at stake for noncitizens with final orders of removal

10   who seek an opportunity to be heard on new applications for relief from removal.  Dkt. 24 at 3

11   (citing *Sied*, 2018 WL 1142202, at *2; *Chhoeun*, 2018 WL 655821, at *9; *Devitri*, 2018 WL

12   661518, at *6; *Hamama v. Adducci*, 261 F. Supp. 3d 820, 838 (E.D. Mich. 2017) ("*Hamama II*").

13   In reply, the Government points out that the cases Mr. Fatty cites all involve motions to reopen,

14   which are a "core procedural entitlement" in removal proceedings and therefore distinguishable

15   from the T visa he seeks.  Dkt. 25 at 3-4 (quoting *Devitri*, 2018 WL 661518, at *5).

16        The Court concludes that Mr. Fatty's removal prior to adjudication of his T visa

17   application does not deprive him of any liberty interest without due process of law.  The law is

18   clear that noncitizens are entitled to due process in *removal proceedings*.  *See, e.g.*, *Demore*, 538

19   U.S. at 523; *Colmenar*, 210 F.3d at 971; *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013).

20   By all accounts, Mr. Fatty's removal proceedings—which are not at issue in this action—

21   comported with due process.  As Mr. Fatty acknowledges, "T visas are not part of removal

22   proceedings or removal orders."  Dkt. 15 at 4; *see also Ching v. Mayorkas*, 725 F.3d 1149, 1154

23   (9th Cir. 2013) ("visa petitions are distinct from removal proceedings").  Thus, the second

*Matthews* factor is dispositive: there is no risk of an erroneous deprivation of Mr. Fatty's liberty interest in remaining in the United States if he is removed before his T visa application is adjudication. He already has received the full protections of due process with respect to the decision of whether he may be removed from this country.

Mr. Fatty's attempts to analogize his T visa application to the motions to reopen that were at issue in *Sied*, *Chhoeun*, *Devitri*, and *Hamama II* are not persuasive. In each of these cases, the courts granted preliminary injunctive relief after finding that the petitioners raised at least serious questions going to the merits of their claims that due process requires pre-removal adjudication of their motions to reopen based on changed conditions in their respective countries of origin, where they allegedly feared persecution. Although there may be some similarities between T visa applications and motions to reopen, as Mr. Fatty argues, Dkt. 24 at 3-4, the two forms of relief are materially different with respect to due process.

Every noncitizen ordered removed has a statutory right to file a motion to reopen his removal proceedings based on material facts that could not have been discovered or presented at a previous hearing. 8 U.S.C. § 1229a(c)(7); *Mata v. Lynch*, 135 S. Ct. 2150, 2153 (2015). Because a noncitizen may not be removed to a country where his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion, 8 U.S.C. §§ 1158, 1231(b)(3), there is no time limit to file a motion to reopen to apply for asylum or withholding of removal based on changed conditions in the country to which removal has been ordered, 8 U.S.C. § 1229a(c)(7). Indeed, the Supreme Court has characterized the right to file a motion to reopen as "an important safeguard intended to ensure a proper and lawful disposition of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (internal quotation marks and citation omitted). Motions to reopen, therefore, are

REPORT AND RECOMMENDATION - 15

properly characterized as part of removal proceedings, which supports the courts' conclusions in *Sied*, *Chhoeun*, *Devitri*, and *Hamama II* that the petitioners had at least serious questions going to the merits of their claims that due process required adjudication of their motions to reopen prior to removal.

By contrast, T visa applications are not part of removal proceedings, as Mr. Fatty recognizes.  Whereas removal proceedings, including motions to reopen, are adjudicated by IJs with appellate rights in the BIA and federal courts of appeals, T visa applications are handled wholly by USCIS.  8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.11(d).  Moreover, Mr. Fatty's T visa application is based completely on events that occurred once he arrived in the United States, and he claims no fear of persecution upon removal to the Republic of Gambia, unlike the petitioners in *Sied*, *Chhoeun*, *Devitri*, and *Hamama II*.  Because T visas are not part of removal proceedings and do not implicate concerns about persecution following removal, the Court declines to extend the reasoning of *Sied*, *Chhoeun*, *Devitri*, and *Hamama II* to Mr. Fatty's case.

In sum, Mr. Fatty's removal prior to adjudication of his T visa application would not deprive him of any liberty interest without due process of law.

### b.    Property interest

No court has addressed whether a T visa applicant has a constitutionally protected property interest.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Ching*, 725 F.3d at 1155 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).  "Instead, a reasonable expectation of

1    entitlement is determined largely by the language of the statute and the extent to which the

2    entitlement is couched in mandatory terms." *Id.* (internal quotation, alteration, and citation

3    omitted).

4           The parties frame the alleged property interest slightly differently.  According to the

5    Government, Mr. Fatty is claiming a protected property interest in adjudication of his T visa

6    application prior to his removal.  Dkt. 23 at 3.  Mr. Fatty, on the other hand, claims that he has a

7    protected property interest at stake in his T visa.  Dkt. 24 at 5-6.  He does not, however, claim

8    that he has a due process right to be *granted* a T visa.  *Id.* at 5.

9           To the extent Mr. Fatty claims a property interest in adjudication of his T visa prior to his

10   removal, the Court agrees with the Government that he does not have a protected property

11   interest.  The Ninth Circuit has held that "procedural delays, such a routine processing delays, do

12   not deprive [noncitizens] of a substantive liberty or property interest unless the [noncitizens]

13   have a 'legitimate claim of entitlement' to have their applications adjudicated within a specified

14   time period." *Mendez-Garcia v. Lynch*, 840 F.3d 655, 666 (9th Cir. 2016) (quoting *Ruiz-Diaz v.*

15   *United States*, 703 F.3d 483, 487 (9th Cir. 2012)).  In *Ruiz-Diaz*, the Ninth Circuit considered a

16   regulation that barred certain noncitizens, including the plaintiffs who were religious workers,

17   from applying for adjustment of status under 8 U.S.C. § 1255(a) concurrently with a visa petition

18   from a sponsoring employer.  *Ruiz-Diaz*, 703 F.3d at 485.  These noncitizens had to wait for

19   approval of their employers' visa petitions before they could apply for adjustment of status.  *Id.*

20   Because of the delays inherent in acquiring approval of a visa petition, noncitizens subject to this

21   regulation could be deprived of relief if their visas expired before adjudication of their

22   adjustment of status applications.  *Id.*  While recognizing that the processing delays "often mean

23   that [noncitizens'] five-year visas have expired before" their applications for adjustment of status

REPORT AND RECOMMENDATION - 17

1    are considered, which "makes it more difficult" to obtain the relief they sought, the Ninth Circuit

2    held that the noncitizens could not claim a due process violation because they had not identified

3    a "legitimate claim of entitlement to have the petitions approved before their visas expire." *Id.* at

4    487 (internal quotation marks and citation omitted).

5           Here, Mr. Fatty does not have a legitimate claim of entitlement to have his T visa

6    application adjudicated before he is removed.  Rather, the governing regulations grant DHS the

7    discretionary authority to determine whether to remove him while his application is pending.  8

8    C.F.R. § 214.11(d)(1)(ii) ("[A noncitizen] subject to a final order of removal, deportation, or

9    exclusion may file an application for T-1 nonimmigrant status directly with USCIS.  The filing

10   of an application for T nonimmigrant status has no effect on DHS authority or discretion to

11   execute a final order of removal, although the [noncitizen] may request an administrative stay of

12   removal pursuant to 8 CFR 241.6(a)."); *see also* 8 C.F.R. § 241.6(a) (an appropriate DHS

13   authority may "in his or her discretion" grant a stay of removal or deportation).  Accordingly, he

14   does not have a protected property interest in adjudication of his T visa application before he is

15   removed.

16          Mr. Fatty attempts to distinguish *Ruiz-Diaz* by noting that the religious workers in that

17   case could still pursue their visa applications even if removed, but he will not be able to obtain a

18   T visa if he is removed because a T visa requires physical presence in the United States.  Dkt. 24

19   at 7.  The court in *Ruiz-Diaz* noted that the challenged regulation did not bar religious workers

20   from applying for adjustment of status; however, that discussion came after the court had already

21   concluded that there was no legitimate claim of entitlement to earlier dispositions of their

22   applications.  *Ruiz-Diaz*, 703 F.3d at 488.  Moreover, the Ninth Circuit has extended *Ruiz-Diaz*'s

23   reasoning in a case where procedural delays resulted in the petitioners having no meaningful

1    opportunity for relief, much like in Mr. Fatty's case.  *Mendez-Garcia*, 840 F.3d at 666 (holding

2    that plaintiffs, who had been ordered removed, had no legitimate claim of entitlement to

3    adjudication of their applications for cancellation of removal before their children turned 21,

4    even though eligibility for such relief required them to establish that their removal would result

5    in hardship to a child under age 21).

6          Turning to Mr. Fatty's framing of the property interest at issue, the Court concludes that

7    he does not prevail.  Mr. Fatty argues that he has a statutory and regulatory right to submit a T

8    visa application, and that once the application is submitted, USCIS has a mandatory duty to

9    conduct an initial review and make a bona fide determination.  Dkt. 24 at 6 (citing 8 U.S.C. §

10   1101(a)(15)(T); 8 U.S.C. § 1184(o); 22 U.S.C. § 7105(b)(1)(A); 8 C.F.R. § 214.11).  Mr. Fatty

11   points out that if the application is bona fide, USCIS must automatically grant a stay of removal.

12   *Id.* (citing 8 C.F.R. § 214.11(d)(1)(ii).  Mr. Fatty maintains that he "meets the threshold

13   requirement of stating a protected property interest in his T visa" because of the agency's

14   mandatory duty to adjudicate his application, make a bona fide determination, and grant a stay if

15   the application is deemed bona fide.  *Id.*

16          The flaw in Mr. Fatty's argument is that USCIS only has the duty to conduct an initial

17   review and make a bona fide determination if he is in the country.  As noted above, the

18   regulations expressly provide that the filing of a T visa application "has no effect on DHS

19   authority or discretion to execute a final order of removal . . . ."  8 C.F.R. § 214.11(d)(1)(ii).  The

20   regulations also provide that if a noncitizen has been removed from the United States, he or she

21   cannot meet the physical presence requirement for T visa eligibility unless certain criteria are

22   met.  8 C.F.R. § 214.11(g)(2).  Thus the regulatory scheme plainly contemplates removal prior to

23   adjudication of a T visa application, preventing the conclusion that Mr. Fatty has a legitimate

1    claim of entitlement to adjudication of his application.

2            In sum, Mr. Fatty does not have a constitutionally protected property interest in his T visa

3    application, and therefore due process does not require that he remain in the United States

4    pending its adjudication.

5    **B.    Bond hearing**

6            Mr. Fatty seeks an individualized bond hearing under *Diouf v. Napolitano*, 634 F.3d 1081

7    (9th Cir. 2011) ("*Diouf II*").[7]  *See* Dkt. 15 at 21-24.  The Government opposes the request.  Dkt.

8    14 at 21-22; Dkt. 16 at 11-12.

9            Title 8 U.S.C. § 1231 governs the detention and release of noncitizens who have been

10   ordered removed.  Under § 1231(a), DHS is required to detain a noncitizen during the "removal

11   period."[8]  8 U.S.C. § 1231(a)(2).  After the removal period expires, DHS has the discretionary

12   authority to continue to detain certain noncitizens or to release them on supervision.  8 U.S.C. §

13   1231(a)(6).  In *Diouf II*, the Ninth Circuit held "that an individual facing prolonged immigration

14   detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government

15   establishes that he is a flight risk or a danger to the community."  634 F.3d at 1082.  Specifically,

16   the court held that the government must provide a custody hearing before an IJ to noncitizens

17   who are denied release in their six-month DHS custody reviews and whose release or removal is

18   not imminent.  *Id.* at 1091-92 ("When detention crosses the six-month threshold and release or

19

20   ───────────────
[7] *Diouf II* remains good law following the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830

21   (2018).  *Cortez v. Sessions*, No. 18-1014, 2018 WL 1510187, at *7 - *10 (N.D. Cal. Mar. 27, 2018); *Borjas-Calix v. Sessions*, No. 16-685, 2018 WL 1428154, at *6 (D. Ariz. Mar. 22, 2018); *Ramos v. Sessions*, No. 18-413, 2018 WL 1317276, at *2 - *3 (N.D. Cal. Mar. 13, 2018).

22   [8] The removal period is the 90-day period that begins on the latest of (i) the date the order of removal becomes

23   administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the noncitizen, the date of the court's final order; or (iii) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  There is no dispute that Mr. Fatty's removal period expired years ago.

REPORT AND RECOMMENDATION - 20

removal is not imminent, the private interests at stake are profound.  Furthermore, the risk of an

erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is

substantial."); *see also id.* at 1092 n.13 ("As a general matter, detention is prolonged when it has

lasted six months and is expected to continue more than minimally beyond six months.").

Mr. Fatty was arrested on September 19, 2017, and thus he has been detained for more

than six months.  In the regular case, there would be no question that he would be entitled to a

bond hearing under *Diouf II*.  The only impediment to Mr. Fatty's removal, however, is the

Court's order temporarily staying his removal.  Dkt. 14-2 at ¶ 12.  The Republic of Gambia has

issued a temporary travel document for Mr. Fatty that does not expire until May 28, 2018.  *Id.* at

¶ 8.  Therefore, if this Report and Recommendation is adopted and the temporary stay of removal

is vacated, it appears likely that Mr. Fatty will be removed promptly.  If so, his request for a

bond hearing should be denied.  But if Mr. Fatty's removal cannot be effectuated within 30 days

of the Court's order on this Report and Recommendation, the Government should be ordered to

provide him with a bond hearing under *Diouf II*.

## CONCLUSION AND RIGHT TO OBJECT

The Court recommends that:

(1)    The Government's motion to dismiss Mr. Fatty's amended petition, Dkt. 14, be

**GRANTED** as to Mr. Fatty's due process and APA claims, and **CONDITIONALLY**

**GRANTED** as to Mr. Fatty's request for a bond hearing;

(2)    The Government be **ORDERED** to provide Mr. Fatty with a bond hearing

pursuant to *Diouf II* **UNLESS** he is removed within 30 days of the Court's Order on this Report

and Recommendation;

(3)    Mr. Fatty's motion for a stay of removal, Dkt. 2, be **DENIED** as moot;

REPORT AND RECOMMENDATION - 21

1    (4)    The temporary stay of removal, Dkt. 3, be **VACATED**; and

2    (5)    The Government's motion to dismiss Mr. Fatty's original petition, Dkt. 5, be

3    **DENIED** as moot.

4    A proposed Order accompanies this Report and Recommendation.

5    This Report and Recommendation is not an appealable order.  Therefore a notice of

6    appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

7    assigned District Judge enters a judgment in the case.  Objections, however, may be filed and

8    served upon all parties no later than **April 19, 2018.**  The Clerk should note the matter for **April**

9    **20, 2018**, as ready for the District Judge's consideration if no objection is filed.  If objections are

10    filed, any response is due within 14 days after being served with the objections.  A party filing an

11    objection must note the matter for the Court's consideration 14 days from the date the objection

12    is filed and served.  The matter will then be ready for the Court's consideration on the date the

13    response is due.  Objections and responses shall not exceed 15 pages.  The failure to timely

14    object may affect the right to appeal.

15    DATED this 5th day of April, 2018.

16

17    _____
      BRIAN A. TSUCHIDA
18    United States Magistrate Judge

19

20

21

22

23

REPORT AND RECOMMENDATION - 22