UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BANGALLY FATTY,<br><br>                Petitioner,<br><br>     v.<br><br>KIRSTJEN M. NIELSEN, et al.,<br><br>                Respondents. | CASE NO. C17-1535-MJP<br><br>ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION;<br><br>GRANTING MOTION TO STAY REMOVAL;<br><br>DENYING MOTION TO DISMISS;<br><br>DENYING MOTION TO ENFORCE COURT ORDER |

THIS MATTER comes before the Court on Petitioner's Objections (Dkt. No. 28) to the Report and Recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge (Dkt. No. 27) and Motion to Enforce Court Order (Dkt. No. 36). Having carefully reviewed the Report and Recommendation, the Objections, the Response (Dkt. No. 29) and all related papers, and having considered the submissions of the parties at oral argument, the Court declines to adopt the Report and Recommendation; GRANTS Petitioner's Motion to Stay Removal; DENIES Respondents' Motion to Dismiss, and DENIES Petitioner's Motion to Enforce Court Order.

**Background**

Petitioner Bangally Fatty filed an immigration habeas petition under 28 U.S.C. § 2241 seeking a judicial stay of his removal pending adjudication of his petition for T nonimmigrant status ("T visa"). The relevant facts and procedural background are set forth in the Report and Recommendation. (Dkt. No. 27 at 2-7.) Mr. Fatty objects to the following findings in the Report and Recommendation: (1) that the Court lacks jurisdiction to hear his due process claims and his claims under the Administrative Procedures Act ("APA"); (2) that he failed to raise a due process claim; and (3) that actions by U.S. Citizenship and Immigration Service ("USCIS") and U.S. Customs Enforcement ("ICE") violated the APA. (See Dkt. No. 28.) Separately, Mr. Fatty moves to enforce the Court's previous order directing Respondents to provide a bond hearing under Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011) ("Diouf II").

**Discussion**

**I. Report and Recommendation**

Under Federal Rule of Civil Procedure 72, the Court must resolve de novo any part of the Magistrate Judge's Report and Recommendation that has been properly objected to and may accept, reject, or modify the recommended disposition. Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1).

**II. Jurisdiction**

The Court finds that 8 U.S.C. § 1252(g) ("Section 1252(g)") does not divest it of jurisdiction to hear Mr. Fatty's claims. Section 1252(g) provides in relevant part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Ninth Circuit has explained

that Section 1252(g) is to be interpreted narrowly, and is intended to limit "attempts to impose judicial constraints upon prosecutorial discretion." United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004) (citation omitted). Section 1252(g) does not divest courts of jurisdiction to hear those cases involving "a purely legal question, which does not challenge the Attorney General's discretionary authority[.]" Id. In particular, Section 1252(g) does not "prevent the district court from exercising jurisdiction over . . . due process claims [that] do not arise from a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien, but instead constitute general collateral challenges to unconstitutional practices and policies used by the agency." Barahona-Gomez v. Reno, 236 F.3d 1115, 1118 (9th Cir. 2001) (internal quotation marks and citations omitted).

Were Mr. Fatty challenging his removal or the discretionary denial of his request for a stay of removal, review of that challenge clearly would be precluded by Section 1252(g). However, Mr. Fatty's claims are more properly categorized as collateral legal and constitutional challenges to the process by which the government seeks to remove him. The Court finds this to be a critical distinction, and one which enables it to hear his case.[1]

### III. Due Process Violations

The Court finds that Mr. Fatty has raised a procedural due process claim based upon his interest obtaining a meaningful determination on his T visa application. Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Elridge, 424 U.S. 319, 332 (1976). Once a petitioner has identified a

---

[1] Having found that Section 1252(g) does not divest it of jurisdiction, the Court does not reach the merits of Mr. Fatty's Suspension Clause arguments.

protected liberty or property interest, the Court must determine whether constitutionally sufficient process has been provided. Id. In making this determination, the Court balances (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335. "Due process is flexible and calls for such procedural protections as the particular situation demands." Id. at 334 (citation omitted).

### A. Mr. Fatty Has a Liberty Interest in Preventing His Removal

The Court concurs with the Report and Recommendation's finding that Mr. Fatty has a liberty interest in preventing his removal.[2] Courts have long recognized that removal implicates substantial liberty interests, such that "the Due Process Clause protects an alien subject to a final order of deportation." Zadvydas v. Davis, 533 U.S. 678, 693-94 (2001); see also Wong Wing v. United States, 163 U.S. 228, 238 (1896).

### B. Mr. Fatty Faces a Risk of Erroneous Deportation

While the Report and Recommendation found that Mr. Fatty has a liberty interest in remaining in the United States, it concluded that he "already has received the full protections of due process with respect to the decision of whether he may be removed from the country," such

---

[2] The Court concurs with the Report and Recommendation's finding that Mr. Fatty does not have a protected property interest in his T visa or its adjudication. (Dkt. No. 27 at 16-20.) "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Ching v. Mayorkas, 725 F.3d 1149, 1155 (9th Cir. 2013) (citation omitted). "Instead, a reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Id. (internal quotation marks and citation omitted). Here, the applicable regulations make clear that "[t]he filing of an application for T nonimmigrant status has no effect on DHS authority or discretion to execute a final order of removal . . ." 8 C.F.R. § 214.11(d)(1)(ii).

that "there is no risk of an erroneous deprivation . . . if he is removed before his T visa application is [adjudicated]." (Dkt. No. 27 at 15.) The Court reaches a different conclusion. If Mr. Fatty is removed before his T visa adjudicated, he will be deprived of a viable defense to removability. If granted a T visa, Mr. Fatty will obtain valid nonimmigrant status and will be allowed to remain in the country. 8 C.F.R. § 214.11(d)(9); 8 U.S.C. § 1255(1), INA § 245(1). However, as physical presence in the United States is a condition of eligibility, his T visa cannot be granted once he is removed. 8 C.F.R. § 214.11(g).

Importantly, Mr. Fatty could not have raised his T visa application in his prior removal proceedings for several reasons: First, Mr. Fatty had not yet filed a the application at the time of his proceedings, and there is evidence in the record that he could not have reasonably done so until years later.[3] Second, even if he had filed an application, the IJ could not have adjudicated it during the removal proceedings, as "USCIS has sole jurisdiction over all applications for T nonimmigrant status." 8 C.F.R. § 214.11(d). In this regard, Mr. Fatty's case is similar to Hamama v. Adducci, 258 F. Supp. 3d 828 (E.D. Mich. 2017), Chhoeun v. Marin, 306 F. Supp. 3d 1147 (C.D. Cal. 2018), Devitri v. Cronen, 289 F. Supp. 3d 287 (D. Mass. 2018), and Sied v. Nielsen, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018). In each of these cases, district courts granted habeas petitions where petitioners sought to stay their removal pending adjudication of

---

[3] While not raising an ineffective assistance of counsel claim with the BIA, Mr. Fatty explains that his prior counsel did not investigate whether he was trafficked and that, had he been informed of the T visa, he would have pursued his application earlier. (Dkt. No. 28 at 6-7.) Further, Mr. Fatty realistically could not have applied for a T visa until the regulations changed in January 2017. See Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status, 81 FR 92266-01, 2016 WL 7326454, at *92273 (Dec. 19, 2016). The recent change eliminated a prior requirement that an applicant who "escaped the traffickers before law enforcement became involved . . . show that he or she did not have a clear chance to leave the United States in the interim," 8 C.F.R. § 214.11(g)(2) (2016), a requirement that Mr. Fatty could not have satisfied.

motions to reopen filed after they were ordered removed. While the Report and Recommendation distinguished these cases on the grounds that the petitioners in each were facing removal to countries where they feared persecution, the Court does not view these cases so narrowly and does not find them so "materially different with respect to due process." (Dkt. No. 27 at 15-16.) Like the petitioners in these cases, Mr. Fatty will be deprived of a full and fair opportunity to raise a defense to removal. In some respects, the due process interest that Mr. Fatty asserts is even stronger, as the petitioners in Hamama, Chheoun, Devitri, and Sied could continue to have their motions to reopen adjudicated from outside the country. While recognizing that Mr. Fatty does not fear persecution on return, his removal is similarly "Kafkaesque" in that, once removed, he will be permanently precluded from pursuing a viable defense to removal. Devitri, 289 F. Supp. 3d at 294; see also 8 C.F.R. § 214.11(g).

### C. Staying Mr. Fatty's Removal Does Not Burden the Government

The Court finds that staying Mr. Fatty's removal pending adjudication of his T visa would preclude any erroneous deprivation of his liberty interests at minimal cost to the government. First, Mr. Fatty has had a final order of removal for more than six years. (Dkt. No. 14, Ex. B at 14.) Second, ICE does not presently have a travel document for Mr. Fatty, and concedes that it will not face difficulty obtaining a travel document should his T visa be denied. (See Dkt. No. 31, Ex. 1 at ¶ 14.) Finally, other than an abstract "interest in efficient administration of the immigration laws" (Dkt. No. 29 at 10), the government has not identified any meaningful burden or hardship it would suffer as a result of a stay.

Having considered all of the Mathews factors, the Court finds that each weighs in favor of staying Mr. Fatty's removal pending adjudication of his T visa. On the facts and circumstances of this case, this is what due process demands.

## IV. APA Violations

### A. USCIS

The Court finds that the bona fide determination made by USCIS as to Mr. Fatty's T visa application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the APA. 5 U.S.C. § 706(2)(A). The regulations set forth the process USCIS is to follow in adjudicating T visa applications: Once an applicant submits his or her application, "USCIS will conduct an initial review to determine if the application is a bona fide application." 8 C.F.R. § 214.11(e). "If USCIS determines that an application is bona fide it automatically stays the execution of any final order of removal, deportation, or exclusion." 8 C.F.R. § 214.11(e)(3). A bona fide determination means "a USCIS determination that an application for T-1 nonimmigrant status has been initially reviewed and determined that the application does not appear to be fraudulent, is complete and properly filed, includes completed fingerprint and background checks, and presents prima facie evidence of eligibility for T-1 nonimmigrant status including admissibility." 8 C.F.R. § 214.11(a).

Mr. Fatty filed his application on or about October 18, 2017. (Dkt. No. 14, Ex. C at ¶ 6.) On December 19, 2017, USCIS submitted a declaration, for purposes of this litigation, stating that "[t]he Federal Bureau of Investigation (FBI) has not yet completed Mr. FATTY's required FBI name check" and "[d]ue to inconsistencies in the record," it could not determine that his application did not appear fraudulent. (Id. at ¶¶ 7-8.) Accordingly, USCIS concluded that "Mr. FATTY's Form I-914 does not meet the criteria to be deemed bona fide under the provisions at 8 C.F.R. § 214.11." (Id. at ¶ 9.) As the agency typically takes 90 days to complete biometric and background checks (Dkt. No. 28 at 13), it would appear that Mr. Fatty's bona fide determination was, at a minimum, premature. See 81 FR 92266-01, 2016 WL 7326454, at *92279 (Dec. 19, 2016) (recognizing that "completion of biometric and background checks depends on several

factors including the schedule of the applicant, the workload of the Federal Bureau of Investigation (FBI) and other factors over which USCIS does not have control," and declining to impose a 90-day deadline for bona fide determination). Further, Mr. Fatty's bona fide determination was made before he supplemented his application with corroborating evidence of his trafficking and evidence addressing the alleged "inconsistencies in the record." (Dkt. No. 28 at 10.)

The Court finds that in making its bona fide determination, USCIS acted arbitrarily, capriciously, and in a manner inconsistent with the applicable regulations. In particular, it appears that Mr. Fatty's bona fide determination was prepared by USCIS at the request of DHS, prematurely, and in response to Mr. Fatty's request to stay his removal. (See Dkt. No. 14, Ex. 3.) To the extent that a favorable bona fide determination automatically stays removal, the regulations indicate Congress' intent that T visa applications are to be adjudicated by USCIS, separate and apart from proceedings involving DHS and/or ICE. See 8 C.F.R. § 214.11(e)(3).

### B. ICE

The Court finds that ICE's denial of his request for a stay was neither arbitrary nor capricious. Mr. Fatty claims that ICE violated the APA when it "failed to consider relevant evidence and argument" and in particular "failed to consider the fact that he was a DOL witness, failed to address the primary legal issue that removal denies him the opportunity to apply for a T visa, and made no mention of the numerous letters of support or hardship evidence he submitted." (Dkt. No. 28 at 13.) While ICE did not specifically enumerate each of the positive equities of Mr. Fatty's case, its failure to do so was not an abuse of discretion. The agency's letter of denial explains that "Mr. Fatty has a lengthy residence in the United States," "is married to a United States citizen and has two United States citizen children," and "is currently studying

at a university." (Dkt. No. 14, Ex. B at 14.)  Offsetting these factors, it notes that Mr. Fatty was "in lawful immigration status for only 3.5 of the 15 years he has been in the United States," and "has had a final order of removal for more than six years." (Id.)  Additionally, the letter explains that Mr. Fatty has a decades-long criminal record; that he made repeated statements to immigration officials inconsistent with those made in his pending T visa application; and that, as recently as last year, he failed to report to ICE under his Order of Supervision. (Id. at 15-16.) On the facts of this case, the Court cannot conclude that the agency abused its discretion in denying his discretionary request for a stay of removal.

V.   **Motion to Enforce Court Order**

As the motions presently before the Court were pending, Mr. Fatty requested, and the Court granted, a bond hearing pursuant to Diouf II. (See Dkt. Nos. 30, 33.)  That hearing was held before an IJ on May 31, 2018. (Dkt. No. 34.)  Finding that he was a flight risk and a danger to the community, the IJ denied Mr. Fatty's request for release on bond. (Id.)  Mr. Fatty now asks the Court to review the IJ's "no bond" determination for legal error and to set a reasonable bond and/or conditions of release. (Dkt. No. 36.)  The Court finds that Respondents have complied with its order directing a bond hearing, and finds no indication of legal error on the record before it.  To the extent that Mr. Fatty intends to raise legal or constitutional challenges to his bond determination, his motion is premature, as (1) Mr. Fatty has failed to exhaust his administrative remedies and (2) the IJ has yet to set forth her findings in a written bond memorandum. See 8 C.F.R. § 236.1(d).

**Conclusion**

For the reasons set forth above, the Court ORDERS as follows:

(1) The Court declines to adopt the Report and Recommendation;

(2) Having found that due process requires that Mr. Fatty's removal be stayed pending adjudication of his T visa application, that Mr. Fatty will suffer irreparable harm absent a stay, and that the government will not be burdened by a stay, the Court GRANTS Petitioner's Motion to Stay Removal (Dkt. No. 2);

(3) Having found that it has jurisdiction to hear Mr. Fatty's due process and APA claims, and having found that Mr. Fatty has established due process and APA violations, the Court DENIES Respondents' Motion to Dismiss Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. No. 14) and Respondents' Motion to Dismiss Petitioner's Original Petition (Dkt. No. 5); and

(4) Having found that the bond hearing was held and that its order was thereby satisfied, the Court DENIES Mr. Fatty's Motion to Enforce Court Order (Dkt. No. 36).

The clerk is ordered to provide copies of this order to all counsel.

Dated July 20, 2018.

Marsha J. Pechman
United States District Judge