# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

BENGALLY FATTY,

           Petitioner,

v.

KIRSTJEN M. NIELSEN, et al.,

           Respondents.

CASE NO. C17-1535 MJP

ORDER GRANTING PETITIONER'S MOTION FOR ATTORNEY FEES

THIS MATTER comes before the Court on Petitioner's Motion for Attorney Fees and Costs (Dkt. No. 49). Having reviewed the Motion, the Response (Dkt. No. 54), the Reply (Dkt. No. 55) and all related papers, the Court GRANTS the Motion for Attorney Fees.

**Background**

Petitioner Bengally Fatty, a native and citizen of the Republic of Gambia, entered the United States on a student visa on July 13, 2002. (Dkt. No. 9, ¶ 20.) After Mr. Fatty arrived, he discovered the funding he thought he would receive for school was not available. (Id., ¶ 21.) Desperate for money, Mr. Fatty agreed to work in a Pennsylvania restaurant, where he became the victim of labor trafficking and was held against his will until he was able to escape. (Id.,

¶¶ 21-24.)  The remainder of Mr. Fatty's long history with United States Immigration and Customs Enforcement ("ICE") is recounted in detail in his Amended Habeas Petition (Dkt. No. 9) and in the Report and Recommendation (Dkt. No. 27).

The instant case began when Mr. Fatty was taken into detention by ICE on September 19, 2017.  (Id. ¶ 1.)  On October 13, 2017 Mr. Fatty filed an immigration habeas petition seeking a bond hearing and judicial stay of removal pending the adjudication of his T (trafficking victim) visa application by U.S. Citizenship and Immigration Services ("USCIS").  (Dkt. No. 9.)  Mr. Fatty argued that removal before his T visa application was processed would violate his right to due process, and he brought an Administrative Procedures Act ("APA") claim alleging that ICE abused its discretion when it denied his administrative request for a stay of removal.  (Dkt. No. 9.)

In a Report and Recommendation filed April 5, 2018, the Honorable Magistrate Judge Brian A. Tsuchida found the Court did not have jurisdiction to stay Mr. Fatty's removal pending adjudication of his T visa because removal fell within the discretionary powers of USCIS.  (Dkt. No. 27 at 8-12.)  Magistrate Judge Tsuchida then concluded removal prior to adjudication of Mr. Fatty's T visa would not deprive Mr. Fatty of a liberty or property interest.  (Id. at 12, 14-20.)

Rejecting the Report and Recommendation, the Court held that Mr. Fatty had a liberty interest in preventing his removal and faced a risk of erroneous deportation if he was removed before his T visa was adjudicated; the Court granted Mr. Fatty's request for a stay of removal.  (Dkt. No. 40 at 4-5.)  The Court also found the bona fide determination by USCIS as to Mr. Fatty's T visa application—the initial step in preparing for adjudication—was improperly made in support of the litigation, before completion of Mr. Fatty's background check, and without supplemental information supporting his application.  (Id. at 7.)  The bona fide determination

was therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the APA. (Id. at 7 (citing 5 U.S.C. § 706(2)(A)).) The Court also ordered Respondents to provide Mr. Fatty with a bond hearing pursuant to Diouf v. Napolitano, 634 F.3d 1081 (9th Cir. 2011) ("Diouf II"). (Dkt. Nos. 30, 33-34.) The bond hearing was held on May 31, 2018. (Dkt. No. 34.)

Mr. Fatty now seeks attorney fees and costs under the Equal Access to Justice Act ("EAJA"), arguing that Respondents' position in this matter was not substantially justified. (Dkt. No. 49 at 5-8.) Mr. Fatty pursues an enhanced rate for his attorney, Christopher Strawn, asserting that Mr. Strawn's distinctive knowledge and specialized skill were necessary to this case and unavailable elsewhere at the statutory rate. (Id. at 9-11.)

**Discussion**

**I.  Legal Standard**

The Equal Access to Justice Act (EAJA) provides that in any action brought by or against the United States, "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds the position the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Fee applicants may apply for "for fees and other expenses which show[ ] that the party is a prevailing party and is eligible to receive an award." 28 U.S.C. 2412(d)(1)(B).

**A.  EAJA Factors**

For this Court to award attorney fees and costs under the EAJA, it must find that (1) the party seeking fees qualifies as the "prevailing party;" (2) the government has failed to meet its burden of showing that its positions were substantially justified, or that special circumstances make an award of fees unjust; and (3) the requested fees and costs are reasonable.

Abdur-Rahman v. Napolitano, 868 F. Supp. 2d 1158, 1160 (W.D. Wash. 2012) (citing United States v. Milner, 583 F.3d 1174, 1196 (9th Cir. 2009).)

As an initial matter, Respondents do not challenge Mr. Fatty's status as an eligible prevailing party. (Dkt. No. 54.) Mr. Fatty has satisfied the prevailing party standard because the Court granted his motion to stay removal pending adjudication of his T visa, a "judicially sanctioned," "material alteration of the legal relationship of the parties." Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't. of Health and Human Res., 532 U.S. 598, 604-05 (2001); Perez-Arellano v. Smith, 279 F.3d 791, 794 (9th Cir.2002) (the Buckhannon rule governs EAJA fee applications).

### a. **Substantial Justification**

Once the petitioner demonstrates he was the prevailing party, the burden then shifts to the government, which may avoid paying an EAJA award if its position was substantially justified. 28 U.S.C. § 2412(d)(1)(B). To meet the "substantially justified" standard, the government must advance a position justified to a degree that could satisfy a reasonable person. Pierce v. Underwood, 487 U.S. 552, 565 (1988). The "position of the United States" includes both the government's litigation position and the underlying agency action giving rise to the civil action. Meier v. Colvin, 727 F.3d 867, 870 (9th Cir. 2013).

In this case, neither the underlying agency action nor Respondents' litigation position were substantially justified. The Agency's refusal to grant Mr. Fatty a mandated bond hearing after he was in re-detention for more than 180 days was unreasonable. (Dkt. No. 36, Ex. 1 at 4). And the bona fide determination by USCIS, the Agency's initial step in adjudicating T visas, was "arbitrary and capricious" and violated the Administrative Procedures Act (APA). ((Dkt. No. 40 at 7-8 (citing 5 U.S.C. § 706(2)(A)).) USCIS then took 17 months to adjudicate Mr. Fatty's T

visa application, well beyond average processing times for 2019. (Dkt. No. 49 (citing Ex. B at 3).)

Respondents contend they were justified in denying Mr. Fatty a bond hearing because he first made the request before he was detained for six months. (Dkt. No. 54 at 4-9.) Although Mr. Fatty sought a bond hearing before he was in custody for six months, on May 22, 2018 <u>after</u> he had been in custody for 180 days, Respondents argued Mr. Fatty was not entitled to a bond hearing, in direct contravention of Ninth Circuit precedent. (Dkt. No. 31 at 2-6); <u>See</u> <u>Diouf v. Napolitano</u>, 634 F.3d 1081 (9th Cir. 2011) ("Diouf II").

Respondents also assert that even if the USCIS acted in an arbitrary and capricious manner, those actions are not per se unreasonable. (<u>Id.</u> at 8-9.) It is true that "this circuit has recognized that arbitrary and capricious conduct is not per se unreasonable," but Respondents fail to explain why in this case USCIS's premature bona fide determination—created without necessary supporting information—was justified. <u>Kali v. Bowen</u>, 854 F.2d 329, 333 (9th Cir. 1988). And while Respondents may be correct that the Government was not required to expedite adjudication of Mr. Fatty's T visa ahead of others, it was unreasonable to adjudicate Mr. Fatty's T visa several months beyond the average wait times while Respondents continued to aggressively pursue removal in Court. (<u>Id.</u> at 9)

Respondents' attempt to justify their litigation position also fails. They contend their primary argument against Mr. Fatty's habeas petition was jurisdictional, which was reasonable because numerous district courts have found Section 1252(g) precludes jurisdiction over removal orders. (Dkt. No. 54 at 4-7.) But Mr. Fatty's claims for relief—claims based on Due Process and violations of the APA—were constitutional and legal challenges collateral to the underlying removal order and not barred by 42 U.S.C. § 1252(g), the jurisdictional provision upon which

1 | Respondents based their arguments. (Dkt. No. 55 at 3; See Dkt. No. 40 at 3 (quoting United
2 | States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004)).) Respondents have failed to
3 | demonstrate their position was substantially justified at any stage.

**B. Calculation of Fees**

Mr. Fatty seeks an award of $76,795 in fees and expenses based upon an hourly rate of $450 per hour for 166.7 hours of Mr. Strawn's own work and an additional $1,780 in expenses for the time spent by declarants Robert H. Gibbs and Devin T. Theriot-Orr who submitted declarations supporting the prevailing rate request. (Dkt. 49 at 9-11; Ex. C "Theriot-Orr Decl.", Ex. D "Gibbs Decl"; Dkt. No. 55 at 6.) Mr. Fatty is not seeking fees for the hours Mr. Strawn spent on the Motion to Compel, worked on issues before the Ninth Circuit, worked with students on this case, or for any student time spent on this matter. (Dkt. No. 49, Ex. E "Strawn Decl." ¶ 4.)

The Court is authorized to award fees above the statutory rate of $125 per hour, adjusted for inflation, when "a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Courts have determined these enhanced hourly rates may be awarded where the attorneys possess (1) "distinctive knowledge" and (2) "specialized skill" that was (3) "needful to the litigation in question" and "not available elsewhere at the statutory rate." Nadarajah v. Holder, 569 F.3d 906, 912 (9th Cir. 2009).

Mr. Fatty demonstrates, and Respondents do not dispute, that his counsel has distinctive knowledge and specialized skill in both immigration law and litigation. (Dkt. No. 49, Ex. E, Strawn Decl. ¶ 2.) Mr. Strawn has practiced immigration law since 2003, serving as the director of the Northwest Immigrant Rights Project, and now directing the Immigration Law Clinic at the

University of Washington School of Law.  (Id. ¶¶ 1-2.)  Mr. Strawn has also been a faculty member and presenter for both national and regional American Immigration Lawyer Association ("AILA") conferences since 2004.  (Id.)

Respondents argue that Mr. Strawn's specialized knowledge and skills were not necessary for this case, which "involved a single petitioner seeking a stay of his removal and a bond hearing."  (Dkt. No. 54 at 10.)  The Court does not find this matter as simple as Respondents suggest.  Two immigration specialists describe this case as presenting novel issues that required a highly experienced immigration attorney.  (See Theriot-Orr Decl., ¶ 13 ("[T]his was a very atypical case."); Gibbs Decl. at 2 ("[B]ecause Mr. Fatty was facing imminent removal, this case required a litigator who could prepare and file all necessary documents on an extremely short time frame.").)  In fact, Mr. Strawn's experience settling a similar case, where an applicant challenged her removal prior to adjudication of a U visa, allowed him to quickly draft the habeas and stay motions for Mr. Fatty.  (Id.)  And Mr. Strawn was able to identify Mr. Fatty's potential eligibility for a T visa when several previous attorneys and adjudicators missed the issue.  (Strawn Decl. ¶ 3.)  Mr. Fatty has also demonstrated that Mr. Strawn's knowledge and skill were not available elsewhere at the statutory rate.  (See Strawn Decl. ¶ 3; Theriot-Orr Decl. ¶¶ 11-12; Gibbs Decl. at 2.)

The Court also finds Mr. Fatty's requested fees and costs reasonable.  Respondents object that Mr. Strawn spent an unreasonable amount of time conferencing with Mr. Fatty (18.7 hours) and drafting the amended habeas petition (11 hours).  (Dkt. No. 54 at 11.)  The Court disagrees.  Because Mr. Fatty was detained throughout the litigation, requiring counsel to travel from North Seattle to the Northwest Detention Center in Tacoma to speak confidentially with his client, 18.7 hours is a reasonable time expenditure.  (Dkt. No. 55 at 5.)  It was also reasonable for Mr. Strawn

to spend 11 hours drafting Mr. Fatty's amended habeas petition, given the new issues raised by Mr. Fatty's T visa application, submitted after his first petition. (See Dkt. No. 9.) Having reviewed Mr. Strawn's time sheets and finding that Mr. Strawn's efforts and the overall relief obtained in this matter were significant, the Court concludes that Mr. Strawn is entitled to an enhanced fee of $450.

## Conclusion

The Court therefore GRANTS Mr. Fatty's Motion and awards him attorney fees and costs in the amount of $76,795.

The clerk is ordered to provide copies of this order to all counsel.

Dated May 3, 2019.

Marsha J. Pechman
United States District Judge